The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Burger and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The stipulations contained in the Pre-Trial Agreement were received into evidence.
2. Medical records from Triangle Orthopedic Associates marked as stipulated exhibit 1 were received into evidence.
3. Medical records from Durham Regional Hospital marked as stipulated exhibit 2 were received into evidence.
4. Medical records from Kaiser Permanente marked as stipulated exhibit 3 were received into evidence.
5. Medical records from Durham Regional Hospital marked as stipulated exhibit 4 were received into evidence.
6. A consultation report from Durham Regional Hospital marked as stipulated exhibit 5 was received into evidence.
7. A form 18 dated August 31, 1994 and a form 18 dated February 24, 1995 were marked as stipulated exhibit 6 and received into evidence.
8. A recorded statement by plaintiff marked as stipulated exhibit 7 was received into evidence.
9. Check stubs marked as stipulated exhibit 8 were received into evidence.
10. Medical records from Wake Medical Center marked as stipulated exhibit 9 were received into evidence.
11. Subsequent to the hearing, the parties submitted a set of medical records from Dr. Gilmer. These records were marked as stipulated exhibit 10 and received into evidence.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. On October 5, 1993, defendant-employer hired plaintiff to serve as a foreman for a crew doing remodeling carpentry. Plaintiff was to be paid on an hourly basis. At the time that defendant-employer hired plaintiff, there were at least three persons working for defendant-employer. Defendant-employer, however, had refused to purchase workers' compensation insurance because of the high premiums.
2. On December 3, 1993, defendant-employer announced to three of his employees that he was no longer going to take taxes out of their paychecks. Defendant-employer informed the employees that the relationship between defendant-employer and the employees would be based on a time and material basis.
3. After December 3, 1994, defendant-employer maintained authority to control how plaintiff and Jeff Hamilton were to accomplish the task to be done. Defendant-employer determined where plaintiff and Jeff Hamilton would work. Defendant-employer determined when plaintiff and Jeff Hamilton were to show up to complete the job.
4. On May 20, 1994, defendant-employer continued to pay plaintiff on an hourly basis. Plaintiff was not doing a specific piece of work for a fixed price, or for a lump sum, or upon a quantitative basis.
5. On May 20, 1994, defendant-employer employed at least three persons as employees: plaintiff, Jeff Hamilton, and Michael Clendening.
6. On May, 20, 1994, plaintiff was on top of a roof of a private home putting felt paper down on the roof when he slipped and fell twenty-three feet. Michael Clendening was standing next to plaintiff when plaintiff fell off the roof.
7. As a result of the May 20, 1994 injury by accident, plaintiff sustained a fractured left wrist with acute carpal tunnel syndrome, a collapsed right lung, multiple rib injuries, and a grade III right AC separation in his right shoulder.
8. As a result of the May 20, 1994 injury by accident, plaintiff was unable to return to work from May 20, 1994 through July 15, 1994. Defendant-employer paid plaintiff full wages during this time period. At the December 9, 1994 hearing, plaintiff testified that he was not paid during this time period. At the May 30, 1995 hearing, plaintiff testified on cross-examination that he did not remember if he had been paid during this time period.
9. As a result of the May, 20, 1994 fall, plaintiff was hospitalized from May 20, 1994 through May 26, 1994. On May 22, 1994, Dr. Peter Gilmer performed surgery on plaintiff's left wrist.
10. Plaintiff returned to see Dr. Gilmer for periodic checkups between June 2, 1994 and July 21, 1994 for the injuries sustained in the May 20, 1994 fall. On June 2, 1994 an examination of plaintiff's right shoulder revealed that plaintiff's right clavicle was elevated relative to plaintiff's AC joint. On July 6, 1994, plaintiff reported that his grade three separation of the AC joint in his right shoulder remained symptomatic. On July 21, 1994, plaintiff's right shoulder remained symptomatic. However, Dr. Gilmer held out hope that plaintiff's shoulder would not require reconstructive surgery.
11. On June 6, 1994, defendant-employer purchased workers' compensation insurance.
12. An employer-employee relationship existed between plaintiff and defendant-employer from July 21, 1994 and through August 15, 1994.
13. Plaintiff testified that he was working for defendant-employer putting tile on a floor when he slipped on the floor. Plaintiff testified that he had his hand on a wall beside the bathtub when his hand slipped causing him to hit the side of the threshold of the bathtub. Plaintiff identified both August 4, 1994 and August 14, 1994 as the date that this alleged incident occurred.
14. On August 14, 1994, plaintiff sought medical treatment at the Durham Regional Hospital Emergency Room. Plaintiff reported to Dr. Charles Murphy that he fell from a step stool approximately two feet in elevation. On August 18, 1994, plaintiff reported to Dr. Gilmer that he fell from a small ladder because he had vertigo.
15. Plaintiff testified that he lied to his medical caretakers concerning the circumstances surrounding a second accident. Plaintiff testified that he lied to his medical caretakers by specifically informing his caretakers that his accident did not occur while he was working. Plaintiff testified that this fraudulent act was done as a result of a request by defendant-employer.
16. Plaintiff wants the undersigned to believe that he fraudulently obtained health benefits from Kaiser Permanante but that he is not trying to fraudulently obtain worker's compensation benefits. The undersigned is unable to determine by the greater weight of the evidence that plaintiff's in-court testimony claiming that a second accident took place while plaintiff was working for defendant-employer in August 1994 is truthful.
17. Plaintiff did re-injure his left wrist and his ribs subsequent to his visit to Dr. Gilmer on July 21, 1994 and prior to his visit to the Durham Regional Hospital Emergency Room on August 14, 1994. These re-injuries were located in the same places as the injuries sustained as a result of the May 20, 1994 fall. Plaintiff's left wrist and ribs had not completely healed prior to plaintiff sustaining re-injuries to these specific locations.
18. The re-injuries to plaintiff's left wrist and ribs were a direct and natural result of the May 20, 1994 injury by accident.
19. There is insufficient evidence of record to determine by its greater weight that plaintiff's re-injuries to his left wrist and ribs were the result of an intervening cause attributable to plaintiff's intentional conduct.
20. Plaintiff did not sustain a re-injury to his right shoulder subsequent to his visit to Dr. Gilmer on July 21, 1994 and prior to August 14, 1994.
21. On October 11, 1994, Dr. Gilmer performed reconstructive surgery on plaintiff's right shoulder. On October 24, 1994, Dr. Gilmer performed surgery on plaintiff's right shoulder to reinsert another screw.
21. The surgeries performed by Dr. Gilmer on October 11, 1994 and October 24, 1994 were a direct and natural result of the May 20, 1994 injury by accident.
22. From August 14, 1994 to October 11, 1994, plaintiff did not receive any medical authorization to stay out of work due to the re-injuries to his left wrist and ribs.
23. There is insufficient evidence of record to find by its greater weight when plaintiff returned to work after August 14, 1994. At the December 9, 1994 hearing, plaintiff testified that he had not returned to work as of that hearing date. Medical records from Dr. Gilmer reveal that as of December 5, 1994 (four days before the hearing) plaintiff was working for a ceiling tile company. (See stipulated exhibit 10). On March 30, 1995, plaintiff reported to defendant-carrier that he had returned to work in February 1995 for Allison Brothers Specialties. Plaintiff testified that this job involves installing ceilings. In light of these inconsistencies, the undersigned does not find plaintiff's testimony credible concerning when plaintiff returned to work after each of his surgeries.
24. At the time of the May 20, 1994 injury by accident, plaintiff's average weekly wage was $361.00. (See stipulated exhibit 8).
25. Defendant-employer believed that he did not have a legal obligation to purchase workers' compensation insurance after January 1, 1994.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On May 20, 1994, there was an employer-employee relationship between defendant-employer and plaintiff.
2. On May 20, 1994, the parties were subject to the provisions of the North Carolina Workers' Compensation Act.
3. On May 20, 1994, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in that he sustained injuries to his left wrist, ribs, and right shoulder as the result of an accident of the work assigned. N.C. Gen. Stat. § 97-2.
4. Plaintiff is entitled to receive temporary total disability compensation for the time period beginning May 20, 1994 through July 15, 1994 at a compensation rate of $241.00 per week. N.C. Gen. Stat. § 97-29.
5. Defendant-employer is not entitled to credit for payments made to plaintiff with respect to his period of disability as a matter of law, and to the degree such credit might be granted in the Commission's discretion pursuant to statute, the same shall be, and is hereby ALLOWED. N.C. Gen. Stat. § 97-42.
6. Plaintiff is entitled to have defendant provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief, or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
7. Defendant refused to purchase workers' compensation insurance for the time period beginning October 5, 1993 to January 1, 1994. The Industrial Commission has the authority to impose a fine for each day that defendant-employer refused to purchase workers' compensation insurance. N.C. Gen. Stat. § 97-94.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant-employer shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of the May 20, 1994 injury by accident.
2. Defendant-employer shall pay the costs.
3. Defendant-employer shall pay a $50.00 fine for each day beginning October 5, 1993 to January 1, 1994. for the refusal to purchase workers' compensation insurance. The total amount of this fine is $4,350.
 S/ ________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _____________________ J. RANDOLPH WARD COMMISSIONER